**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Criminal Action |
| | ) No. 04-05030-01-CR-SW-RED |
| MICHAEL HARRIS, | ) |
| | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant has filed a Motion to Suppress Evidence in which he asserts that all evidence discovered and statements made during the search of his vehicle on September 6, 2004, should be suppressed. The government has responded to that motion.

The matter was set for an evidentiary hearing, which was held before the undersigned on October 31, 2005. The defendant was present with counsel, Assistant Federal Public Defender Nancy Price. The United States was represented by James Kelleher, Special Assistant United States Attorney.

The United States first called John Randall, who is employed by the Vernon County Sheriff's Department. On September 6, 2004, he was employed as an investigator. The officer testified that he was conducting surveillance at a plant where anhydrous ammonia was stored. During his five years of service as an investigator, he had made at least 25 arrests regarding theft of anhydrous ammonia at the plant. Early that morning, about 4:30 a.m., as he was watching the area, he heard a noise by the tanks. He had noticed a vehicle prior to that, driving towards the

area, and then he lost sight of it.  It was not normal to see traffic at that time of day.  The sound

he heard was like a gate being opened, which led him to believe that someone was near the tanks

because they were set apart by two metal gates.  He pulled his truck out of the cornfield where he

was parked, and drove towards the gate, finding it open.  Officer Randall had last checked on the

gate about 4:15 a.m. to make sure it was closed.  He pulled his truck onto the anhydrous

ammonia facility area.  The officer saw no vehicle, but saw a subject walking towards him.  He

knew the tanks were accessed legally during normal day time hours, but not at this time of

morning.  The subject, a white male, was inside the gate.  He was dressed in dark clothing,

including gloves, although it was not that cold in September.  The officer exited his vehicle, and

ordered the subject on the ground, with his gun drawn.  He then had the suspect stand up, walk a

little closer, and he then ordered him to the ground again.  Officer Randall proceeded to handcuff

defendant and arrest him for attempted theft of anhydrous ammonia.  Officer Randall detained

him in handcuffs for officer safety.  In his experience, he knew that the subject might have

someone else with him, so he radioed for backup.  Defendant told him that he was changing a

flat tire on his truck. This was before he had been advised of his rights. The officer then advised

him of his <u>Miranda</u> rights, and asked him about being there stealing anhydrous ammonia.  He

said he was there to change a tire, but admitted that there was a propane tank in his truck.

Officer Randall knew, based on his training and experience, that propane tanks are used to

transport anhydrous ammonia.  He also admitted that he was there to steal anhydrous.

Specifically, Officer Randall testified that defendant stated that if he wasn't home by 7:00 a.m.,

something would happen to his family.  He said he would go to prison, while the person who he

was stealing the anhydrous ammonia for would go free.   After backup officers arrived, the

officer located the truck inside the gate, near the anhydrous ammonia tanks. He then searched the open bed of the truck, because they observed a blue tarp in the bed, which they believed to be covering the propane tank. The officer found the tank under the tarp, with a bluish residue on the valve, which through experience he knew indicated that the tank had had anhydrous in it. In searching the cab of the truck, the officers found a pistol, numerous knives, a night vision set, a spotlight, and lithium batteries.

It is defendant's contention that the officer did not have probable cause to arrest him for the attempted theft of anhydrous ammonia. He seeks suppression of the statement he gave and the evidence seized from the truck on the grounds that it was unlawfully obtained.

The Eighth Circuit Court of Appeals has recently reiterated the law on probable cause for an arrest based on the totality of the circumstances standard. United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). The Mendoza court held that "[p]robable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense.'" Id. at 667, quoting United States v. Cabrera-Reynoso, 195 F.3d 1029, 1031 (8th Cir. 1999). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." Mendoza, 421 F.3d at 667 (internal citations omitted).

Having fully reviewed the evidence, the Court finds that it must be recommended that defendant's motion to suppress be denied. The information available to the officer was clearly sufficient to establish probable cause in this case. It should be noted, initially, that Officer

Case 3:04-cr-05030-MDH   Document 25   Filed 12/01/05   Page 3 of 4

Randall had extensive experience with the theft of anhydrous ammonia at the area where he was conducting surveillance. Further, it was 4:30 a.m., and he discovered that a previously locked gate had been opened between 4:15 and 4:30 a.m. He saw defendant inside the area restricted by the gates, dressed in heavy, dark clothing and with gloves on, even though it was early September. Based on the officer's experience and the facts available to him at that point, he arrested defendant for attempted theft of anhydrous ammonia. It is clear that, under the totality of the circumstances, a prudent person would conclude that there was a substantial probability that criminal activity was occurring. Based on the testimony adduced at the hearing, and applicable case law, the Court finds that it should be recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress be denied.


 /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge


Date: December 1, 2005